STATE OF LOUISIANA

VERSUS

ONEIL GILBERT, III

NO. 23-KA-121

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 22-1212, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

November 08, 2023

**SCOTT U. SCHLEGEL**
**JUDGE**

Panel composed of Judges Robert A. Chaisson,
John J. Molaison, Jr., and Scott U. Schlegel

**CONVICTIONS AFFIRMED; SENTENCE ON COUNT
ONE AFFIRMED; SENTENCE ON COUNT TWO
VACATED AND REMANDED FOR RESENTENCING;
REMANDED ON COUNT ONE FOR CORRECTION
OF THE COMMITMENT**
  **SUS**
  **RAC**
  **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
      Honorable Paul D. Connick, Jr.
      Thomas J. Butler
      Anne M. Wallis
      Kristen Landrieu
      Carolyn Chkautovich

COUNSEL FOR DEFENDANT/APPELLANT,
ONEIL GILBERT, III
      Katherine M. Franks

**SCHLEGEL, J.**

Defendant, Oneil Gilbert, III, appeals his convictions and sentences for one count of possession of a firearm by a convicted felon, and one count of possession of cocaine in an amount under two grams. We affirm defendant's convictions and sentences. However, we remand the matter for correction of errors patent.

PROCEDURAL HISTORY

On March 22, 2022, the Jefferson Parish District Attorney filed a bill of information charging defendant, Oneil Gilbert, III, with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count one), and possession with intent to distribute a controlled dangerous substance, cocaine weighing less than 28 grams, in violation of La. R.S. 40:967(A) (count two). Defendant was arraigned and pled not guilty on March 25, 2022. Various pleadings were filed, including an omnibus motion containing motions to suppress statement and evidence. Following a hearing on July 13, 2023, the trial court denied the motions to suppress the evidence and statement.

On October 19, 2022, the State amended count two of the bill of information to charge defendant with possession of a controlled dangerous substance, cocaine weighing less than 2 grams, in violation of La. R.S. 40:967(C). During a jury trial held the same day, a twelve-person jury unanimously found defendant guilty as charged on both counts.

On October 24, 2022, defendant was sentenced to 20 years on count one, and 2 years on count two.[1] The sentences were ordered to run concurrent with each other.

The State subsequently filed a multiple offender bill of information on November 10, 2022, as to count one (possession of a firearm by a convicted felon),

_____

[1] As discussed below under errors patent, the trial court did not state at the sentencing hearing whether the sentences were to be served with or without benefit of probation, parole or suspension or with or without hard labor.

and alleged that defendant previously pled guilty to obscenity in Case No. 20-2252 in violation of La. R.S. 14:106 on October 13, 2021, and pled guilty to simple burglary in Case No. 10-2480 in violation of La. R.S. 14:62 on January 17, 2012. An amended multiple offender's bill was also filed on November 10, 2022, in which the State alleged that defendant had pled guilty to obscenity in Case No. 20-2253 in violation of La. R.S. 14:106 on October 13, 2021. The charge of simple burglary under Case No. 10-2480 was removed from the multiple bill.

At the multiple offender bill hearing on January 20, 2023, the trial court adjudicated defendant as a second-felony offender on count one, vacated the original sentence on count one, and sentenced defendant to "40 years" to run "concurrent with the other crimes".[2]

Defendant now appeals and asserts, as his sole assignment of error, that the trial court erred in denying the motions to suppress evidence and statement.

FACTS

On March 6, 2022, Deputy Michael Morrison, a Jefferson Parish Sheriff's Office deputy of almost seventeen years with nearly twenty years of military experience, responded to a dispatch by the 911 operator, who had received a suspicious person call. The caller relayed via 911 that he had seen a black male break off a piece of crack cocaine, put it in a baggy, and sell it to somebody near a Honda truck (Ridgeline) in the Fast Stop store parking lot at 3220 Jefferson Highway. The initial report was made by someone named "Brian," but "Brian" was never located or interviewed. Deputy Morrison was not initially given a description, but when he asked the dispatcher for a better description, he was told that it was a bald, black man wearing black pants and a black shirt.

When Deputy Morrison arrived on the scene, he did not see anyone matching the description, but was able to speak with someone in the parking lot

---

[2] See errors patent discussion below.

about who owned the truck. The person was not able to provide Deputy Morrison with a name but stated that the owner of the subject truck was a bald, black male wearing a blue shirt and black pants. Deputy Morrison also spoke with a clerk inside the store, who stated that the Honda pick-up truck belonged to a bald, black male wearing black pants and a blue shirt.[3] The clerk further noted that the person driving the subject truck told him that he would be right back because he had lost his key and was going back to his house to get a spare. The clerk last saw this person walking southbound on Shrewsbury Court.

As Deputy Morrison was speaking with the clerk, Deputy Justin McCubbins, arrived on the scene to assist with the investigation.[4] Deputy Morrison provided Deputy McCubbins with a description of the subject soon thereafter, whereupon Deputy McCubbins relayed that he had just seen a black male who matched the description exiting the corner of the parking lot, heading southbound, down Shrewsbury Court on foot. More specifically, Deputy McCubbins testified that as he walked out of the store, he saw defendant walking towards them but the defendant turned around and started walking extremely fast in the opposite direction when he saw the deputies. As a result, Deputy Morrison pursued on foot while Deputy McCubbins entered his unit and drove southbound.

Deputy McCubbins drove past defendant, pulled in front of him on Shrewsbury Court and exited his vehicle as Deputy Morrison was still walking down the road towards them. Deputy McCubbins instructed defendant to stop and drop the two yellow bags that he was carrying. Defendant refused, so Deputy McCubbins grabbed the yellow bags and placed them on the ground. When he grabbed the bags, he could immediately tell by the weight that one of the bags was

---

[3] At the suppression hearing, Deputy Morrison testified that the clerk told him the suspect was wearing a red shirt with blue pants.

[4] Deputy McCubbins had been working for the Jefferson Parish Sheriff's Office for approximately two months at the time and had previously worked at the New Orleans Police Department for six years.

heavier than the other. In his experience this suggested that the bag contained a firearm. Deputy McCubbins advised defendant of his Miranda rights as Deputy Morrison approached. Defendant was then brought over to the vehicle to be handcuffed and searched for officer safety, at which point he began to resist. The deputies were able to gain control and get handcuffs on defendant. Defendant was then brought to the other side of the car and patted down by Deputy McCubbins, who felt what he believed to be narcotics packaging in defendant's right pocket.

At this point, Deputy Morrison took over the pat-down and felt a slightly oblong object consistent with a marijuana bud in defendant's right, front, pants pocket. He pulled the zipper down and observed what he believed to be drugs on top, all while smelling a strong odor of marijuana. During the subsequent search, the deputies located a large white bag containing marijuana, a smaller bag that contained crack cocaine, and some wadded up money in multiple denominations. These items were removed and placed in Deputy McCubbins's unit. Deputy Morrison also found several bullets and a crack pipe in defendant's front, left, jean jacket pocket, which he put on top of the unit by the windshield. At this point, Deputy Morrison became concerned about continuing the search on the street because it was nighttime and dark, so they all relocated to the store parking lot. Unfortunately, the bullets and crack pipe were lost as they were forgotten about and left on the hood during the drive back. Deputy Morrison escorted defendant back to the store parking lot on foot.

When they arrived back at the parking lot, Deputy Morrison again advised defendant of his Miranda rights by memory and told him that there had been a report of him selling crack cocaine and that someone had observed him break off a piece of crack, put it in a bag, and sell it. Defendant eventually admitted to such when speaking with Detective Colton O'Connor, who had been summoned to the scene by Deputy Morrison. After being advised of his Miranda rights again by

Detective O'Connor, defendant admitted that he had sold a little bit of cocaine to a friend of his. Detective O'Connor did not testify at the trial.

Sometime after arriving back at the store, Deputy Morrison searched the two yellow bags and found a Taurus revolver with five rounds of .38 caliber ammunition inside the revolver. The deputies also searched defendant's truck after receiving his consent to do so. They did not locate additional weapons or narcotics, but found suitcases in the back of the truck that contained clear, plastic baggies.

Upon running defendant's rap sheet, Deputy Morrison learned that defendant was on probation or parole and that he had a history of armed robbery and rape offenses. Defendant was arrested for (1) possession with intent to distribute crack cocaine under La. R.S. 40:967A, (2) possession of a firearm with controlled dangerous substance under La. R.S.14:95E, (3) felon in possession of a firearm under La. R.S. 14:95.1, and (4) possession of marijuana under La. R.S. 40:966C.

## LAW AND ANALYSIS

As a preliminary matter, we acknowledge that defendant's motion for appeal is in part untimely filed. Defendant was originally sentenced on October 24, 2022. He was resentenced on the multiple bill on January 20, 2023. His motion for appeal, filed on January 27, 2023, includes an appeal from the verdict rendered on October 24, 2022. Thus, the appeal was not filed within 30 days of the October 19, 2022 verdict in accordance with the requirements of La. C.Cr.P. art. 914. However, we will consider defendant's appeal to avoid "further useless delay." *See State v. Fair*, 15-434 (La. App. 5 Cir. 12/23/15), 182 So.3d 1238, 1240 n.1, *writ denied*, 16-185 (La. 2/3/17), 215 So.3d 688 ("Although the motion for appeal was untimely according to La. C.Cr.P. art. 914, we will address the merits of defendant's appeal to avoid further useless delay.")

In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D); *State v. Morales*, 12-454 (La. App. 5 Cir. 12/18/12), 125 So.3d 1141, 1145. A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. *Id.*; *State v. Abrego*, 21-166 (La. App. 5 Cir. 12/1/21), 334 So.3d 883, 889, *writ denied*, 21-1949 (La. 2/22/22*)*, 333 So.3d 450. In determining whether the trial court's ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing but may also consider pertinent evidence presented at trial. *State v. Bradley*, 22-191 (La. App. 5 Cir. 12/21/22), 356 So.3d 485, 495, *writ denied*, 23-147 (La. 10/31/23), __ So.3d __.

The Fourth Amendment of the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. *State v. Richardson*, 18-401 (La. App. 5 Cir. 2/6/19), 265 So.3d 1006, 1010. However, the right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity is recognized by La. C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Abrego*, 334 So.3d at 888. The *Terry* standard, as codified in La. C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. *State v. Abrego*, 334 So.3d at 888. Reasonable suspicion, which is something less than probable cause to arrest, requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual's right to be free from government interference. *Id.*; *State v. Sam*, 05-88 (La. App. 5 Cir. 5/31/05), 905 So.2d 379, 383-84, *writ denied*, 05-2100 (La. 3/10/06), 925 So.2d 510. Police do not have to observe what they

know to be criminal behavior before investigating. *State v. McKnight*, 22-499 (La. App. 5 Cir. 5/24/23), 366 So.3d 798, 804. Evidence derived from an unreasonable stop will be excluded from trial. *Id.* The determination of reasonable grounds for an investigatory stop does not rest on the officer's subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action. *Id.* A reviewing court must take into account the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might elude an untrained person. *Id.*

Under certain circumstances, an informant's tip can also provide reasonable suspicion to detain and question a person. *State v. Clay*, 06-37 (La. App. 5 Cir. 4/25/06), 930 So.2d 1028, 1032, *citing*, *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Whether an informant's tip creates reasonable suspicion necessary to justify an investigatory stop is determined by considering the totality of the circumstances. *Id.*, *citing*, *Illinois v. Gates,* 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983). As further explained by this court in *State v. Clay*:

> The anonymous caller's ability to predict the suspect's future behavior goes toward proving reliability, as it demonstrates inside information and a special familiarity with the suspect's affairs. *See, Alabama v. White,* 496 U.S. at 332, 110 S.Ct. at 2417; *State v. Boss, supra.* Independent corroboration of the details of an informant's tip by police investigation is valuable to the totality of the circumstances analysis. *State v. Boss, supra.* **A non-predictive anonymous tip paired with either police corroboration or independent police observation of unusually suspicious conduct can provide police with the reasonable suspicion needed to temporarily detain the suspect**. *Id.* "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Alabama v. White,* 496 U.S. at 330, 110 S.Ct. at 2416. *See also, State v. Boss, supra.*

*Id.* [Emphasis added].

In his sole assignment of error, defendant argues that the trial judge erred in denying the motions to suppress evidence and statements.[5] He argues that the stop, his handcuffing, and subsequent search of his person and his belongings were not justified under the circumstances. He further argues that because the evidence seized flowed from an unjustified stop and frisk, it is fruit of the poisonous tree and should have been suppressed. Specifically, defendant argues that the tip, from an unknown informant, did not give a time frame as to when the sale had occurred, did not have a description of the truck other than that it was a Honda, did not have a description of the person who sold the piece of crack, and did not include a "predictive element". The State, on the other hand, asserts that the deputies had sufficient reasonable suspicion to stop defendant as a suspicious person under the totality of the circumstances.

Upon review, we find that the deputies had reasonable suspicion to stop defendant based upon the tip, corroborating evidence and independent observations of the deputies. In the case of *State v. Clay*, *supra*, we found that the police did not have reasonable suspicion necessary for an investigatory stop when the tip consisted of a report of gunfire made by an unknown complainant, and the officers "simply approached the first people they saw in the area." *State v Clay*, 930 So.2d at 1033.

Similarly, in the case of *State v. Lane*, 09-179 (La. App. 5 Cir. 9/29/09), 24 So.3d 920, 925, *writ denied,* 09-2360 (La. 5/21/10), 36 So.3d 226, a policeman, who had just gotten off duty, heard a sheriff's office dispatch regarding a suspicious maroon car in a parking lot, and "[p]ossible drug activity going on at that location." The officer then observed a maroon car attempting to leave the

---

[5] It is unclear which statements defendant challenges. At the trial, the deputies' body camera videos were played on silent. Detective O'Connor testified as to a statement made by defendant at the suppression hearing, but did not testify at the trial. Thus, we conclude that there are no statements made by defendant that are at issue in this appeal.

parking lot. The *Lane* court held that "[w]ith no predictive tip, no corroboration of the tip given, and no observation of suspicious activity, we find that Deputy Sperandeo lacked reasonable suspicion to conduct an investigatory stop of the vehicle in which defendant was riding." *Id.*

In the pending case though, contrary to *Clay* and *Lane*, the tip included specific information about the sale of narcotics, a particular vehicle and the description of a bald, black male, later expanded to also include a description of the clothing worn by defendant. Further, the tip was corroborated by other individuals on the scene and the deputies personally observed suspicious conduct on the part of defendant, who began walking extremely fast in the opposite direction upon the sight of the deputies. Considering these factors and the experience of the deputies, we conclude that under the totality of the circumstances, the deputies had sufficient reasonable suspicion for an investigatory stop of defendant.

We next consider defendant's remaining arguments that the forcible taking of defendant's belongings, his handcuffing, the frisk and search of his person, and the later search of his belongings were unjustified and violated his Fourth Amendment right to privacy.

Once an officer conducts an investigatory stop of a person pursuant to La. C.Cr.P. art. 215.1(B), the officer may conduct a limited pat-down frisk for weapons if he reasonably believes he is in danger or that the suspect is armed. *State v. Johnson*, 10-209 (La. App. 5 Cir. 10/12/10), 52 So.3d 110, 119, *writ denied,* 10-2546 (La. 4/1/11), 60 So.3d 1248. If in the course of an Article 215.1 weapons frisk, an officer feels an object whose contour or mass makes its identity as contraband immediately apparent, the officer may seize it under the "plain feel" exception to the warrant requirement. *State v. Taylor*, 06-558 (La. App. 5 Cir. 7/30/07), 966 So.2d 631, 640, *writ denied,* 07-1902 (La. 2/1/08), 976 So.2d 717.

The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object's incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object. *State v. Gray*, 13-1326 (La. 6/28/13), 122 So.3d 531, 533. The plain smell exception is an extension of the plain view exception. *State v. McKnight*, 366 So.3d at 804, *citing*, *State v Gray*, 122 So.3d at 533.

Again in the present case, we find the deputies' actions were justified considering the totality of the circumstances. Defendant was seen leaving the parking lot in a hurry and refused to cooperate when the deputies caught up to him on Shrewsbury Court. Defendant also refused to drop the two yellow bags when ordered to do so, requiring Deputy McCubbins to grab the bags and then physically detain him. Deputy McCubbins also testified that the weight of one of the bags suggested to him based upon his experience that it contained a firearm. As a result, Deputy McCubbins conducted a pat-down for officer safety and felt what he believed to be narcotics packaging in defendant's right pocket. The deputy was justified in conducting a limited pat-down frisk. These actions led to the discovery of the evidence that defendant now seeks to exclude. As set forth above in La. C.Cr.P. art. 215.1(B), the deputies' actions in seizing the evidence from the defendant's pocket under the plain feel, plain view and plain smell exceptions to the warrant requirement were justifiable and thus constitutional. Furthermore, the deputies' actions in searching the two yellows bags when they arrived back at the parking lot, which led to the seizure of a firearm, were also justifiable for the reasons assigned above and thus constitutional. The fruit of the poisonous tree doctrine does not apply. Accordingly, we find no abuse of discretion in the trial court's denial of defendant's motion to suppress.

## ERRORS PATENT REVIEW

We reviewed the record for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5ᵗʰ Cir. 1990). The following require corrective action.

A. Count Two

Defendant was sentenced to 2 years on count two. La. R.S. 40:967(C)(1) provides that the term of imprisonment for possession of cocaine weighing less than 2 grams is "with or without hard labor, for not more than two years." Although the commitment dated October 24, 2022, reflects that defendant's sentence was imposed at hard labor, the sentencing transcript does not reflect the trial court ordered the sentence to be with or without hard labor. When there is a discrepancy between the minutes and the transcript, the transcript must prevail. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

Where the applicable sentencing statute allows discretion, the sentencing court's failure to indicate whether the sentence is to be served with or without hard labor is an impermissible, indeterminate sentence. *State v. Brignac*, 17-455 (La. App. 5 Cir. 3/14/18), 241 So.3d 528, 535, *writ denied,* 2018-0564 (La. 2/11/19), 263 So.3d 894. We must therefore vacate defendant's sentence on count two for possession of cocaine weighing less than 2 grams and remand the matter to the trial court for the imposition of a determinate sentence in accordance with La. C.Cr.P. art. 879.

B. Count One

At the multiple offender bill hearing on January 20, 2023, the trial court adjudicated defendant as a second-felony offender on count one, vacated the original sentence, and sentenced defendant to "40 years" to run "concurrent with the other crimes". Although the minute entry reflects that defendant's sentence was imposed at hard labor, it does not say that the sentence is to be without benefit

of parole, probation, or suspension of sentence. The sentencing transcript also does not reflect whether the sentence was to be with hard labor or without the benefit of parole, probation, or suspension of sentence. As set forth above, when there is a discrepancy between the minutes and the transcript, the transcript must prevail. *State v. Lynch*, 441 So.2d at 734.

La. R.S 15:529.1(G) provides that the multiple offender sentence was to be served "at hard labor without benefit of probation or suspension of sentence". The restrictions on parole eligibility in multiple offender sentences under La. R.S. 15:529.1 "are those called for in the reference statute." *State v. Heath*, 17-502 (La. App. 5 Cir. 12/27/17), 236 So.3d 732, 736. Pursuant to La. R.S. 14:95.1, defendant's sentence as to count one was supposed to be imposed without the benefit of parole, probation, or suspension of sentence. Under La. R.S. 15:301.1, the statute's requirement that a defendant be sentenced without the benefit of parole, probation, or suspension of sentence is self-activating and no correction is required. *State v. Fisher*, 19-504 (La. App. 5 Cir. 12/23/20), 307 So.3d 1204, 1227, *writ denied,* 2021-00130 (La. 5/4/21), 315 So.3d 219.

However, we remand the matter and direct the district court to correct the commitment and the Uniform Commitment Order ("UCO") to reflect that defendant's sentence to the multiple bill is to be served without benefit of parole, probation, or suspension of sentence. *See State v. Bourgeois*, 22-418 (La. App. 5 Cir. 4/26/23), 361 So.3d 1138, 1151-52 (Matter remanded to district court to correct the multiple bill sentencing minute entry to reflect that the entire enhanced sentences were to be served without benefit of parole, probation, or suspension of sentence); *State v. Bardell*, 17-274 (La. App. 5 Cir. 11/15/17), 232 So.3d 82, 89-90 (While the statutory restriction of benefits was self-activating, the court nonetheless remanded for correction of the sentencing minute entry and UCO to reflect the correct restriction of benefits).

We also direct the trial court to correct the UCO to reflect that defendant was adjudicated a habitual offender on January 20, 2023, and that his original sentence was vacated on January 20, 2023, instead of on January 27, 2023, as reflected in the UCO.

C. <u>Post-Conviction Relief Advisal</u>

We further note that according to the transcript, the trial court did not advise defendant of the two-year prescriptive period for filing an application for post-conviction relief as required by La. C.Cr.P. art. 930.8.  If a trial court fails to advise, or gives an incomplete advisal, as required by La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *State v. Becnel*, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1022.

Accordingly, by way of this opinion, we advise defendant that no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.

CONCLUSION

For the foregoing reasons, we affirm defendant's convictions on counts one and two, and defendant's sentence on count one. We vacate defendant's sentence on count two and remand for resentencing on count two. We further remand the matter and direct the district court to correct the commitment and the UCO to reflect that (1) defendant's sentence as to count one is to be served with hard labor, without benefit of parole, probation, or suspension of sentence as required by La. R.S 15:529.1(G) and La. R.S. 14:95.1, and (2) that defendant was adjudicated a habitual offender as to count one on January 20, 2023, and that his original sentence was vacated on January 20, 2023.

23-KA-121                                        13

We further instruct the Clerk of Court for the 24th Judicial District Court to transmit the original of the amended commitments to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections' Legal Department.

23-KA-121

**CONVICTIONS AFFIRMED; SENTENCE ON COUNT ONE AFFIRMED; SENTENCE ON COUNT TWO VACATED AND REMANDED FOR RESENTENCING; REMANDED ON COUNT ONE FOR CORRECTION OF THE COMMITMENT.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**NOVEMBER 8, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-KA-121**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
ANNE M. WALLIS (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          KATHERINE M. FRANKS (APPELLANT)

### MAILED
ONEIL GILBERT, III #121293 (APPELLANT)    CAROLYN CHKAUTOVICH (APPELLEE)
RAYBURN CORRECTIONAL CENTER               HONORABLE PAUL D. CONNICK, JR.
27268 HIGHWAY 21                          (APPELLEE)
ANGIE, LA 70426                           KRISTEN LANDRIEU (APPELLEE)
                                          ASSISTANT DISTRICT ATTORNEYS
                                          TWENTY-FOURTH JUDICIAL DISTRICT
                                          200 DERBIGNY STREET
                                          GRETNA, LA 70053